

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BAVARO PALACE, S.A., a foreign corporation,

    Plaintiff,

v.

VACATION TOURS, INC., a/k/a
VACATION STORE OF MIAMI, INC.,
a Florida corporation, and ROSANNA
METZ-MENDEZ, an individual,

    Defendants.

_____/

CASE NO. 04-20422-CIV-KING

## OPINION AND FINAL JUDGMENT

### I. BACKGROUND

Plaintiffs filed the above-styled action in order to enforce and protect alleged intellectual property rights in the Bavaro Palace, Bavaro Beach, Bavaro Caribe, Bavaro Golf, Bavaro Villas, and Barcelo names (collectively, the "Alleged Marks") of hotels located in Punta Cana, Dominican Republic. The eight-count Complaint alleged; (I) Federal Unfair Competition pursuant to 15 U.S.C. § 1125(a); (II) violations of the Anticybersquatting Consumer Protection Act: 15 U.S.C. § 1125(d); (III) Common Law Unfair Competition; (IV) Dilution under 15 U.S.C. § 1125(c);[1] (V) violations of

---

[1] At the start of the trial, Plaintiffs withdrew Count IV from their Complaint.

Florida's Unfair Competition Act: Fla. Stat. § 495.151;[2] (VI) violations of Florida's Unfair Competition Acts: Fla. Stat. § 501.204 ("Lanham Act Claim"); (VII) Unjust Enrichment; and (VIII) Accounting.[3]

Barcelo Bavaro Palace is the name of a hotel in the Dominican Republic owned and operated by Bavaro Palace, S.A. Barcelo Bavaro Palace is located at Bavaro Beach in the Punta Cana region of the Dominican Republic. Barcelo Bavaro Palace is part of an international hotel and resort chain, Barcelo Hotels & Resorts, that provides accommodations in, among other places, the Punta Cana/Bavaro region of the Dominican Republic. The Barcelo Bavaro Palace is one of five hotels in a complex situated in the Punta Cana region of the Dominican Republic called the Barcelo Bavaro Beach Resort. The five hotels are the Barcelo Bavaro Palace, the Barcelo Bavaro Beach, the Barcelo Bavaro Caribe, the Barcelo Bavaro Casino, and the Barcelo Bavaro Golf.

Vacation Tours, is a local wholesale and retail travel agency providing vacation packages, hotel accommodations and other travel related services to a number of locations including the Dominican Republic. Vacation Tours has two offices, one in Miami Beach, Florida and one in Coral Gables, Florida. The Coral Gables office does

---

[2] Plaintiffs voluntarily dismissed Count V of the Complaint. (Pre-trial Stip. at 2.)

[3] At trial, the parties agreed they would not present any evidence in relation to damages, specifically to Count VIII regarding Accounting for lost profits. The parties agreed that the damages claim regarding accounting for lost profits, would be severed and they would only present evidence on this issue at a post-trial proceeding, if the Court found that Defendants were in violation of any of the Plaintiffs' five remaining counts. (Trial Trans. at 72-73.)

2

primarily wholesale business and limited retail. Ms. Metz-Mendez is an officer, shareholder, and an employee of Vacation Tours. Vacation Tours had a long standing relationship with Bavaro Palace, S.A.'s parent company, Barcelo Hotels & Resorts for almost eight years and had, before 2003, contracted to sell rooms at the Barcelo Bavaro Palace.

Vacation Tours entered into a contract in late 2003 with Viajes Barcelo (a company related to Barcelo Hotel and Resorts) in which it could purchase hotel rooms at properties in the Dominican Republic, including Barcelo hotels. Viajes Barcelo provided Vacation Tours a pass code that gave it access and authorization to book rooms via www.barcelo.com and www.hotelbeds.com at the Barcelo Group's hotels in the Dominican Republic. Vacation Tours could utilize the agreement to obtain rooms at Barcelo hotels from its Coral Gables location. At the retail store on Miami Beach, Vacation Tours was able to book rooms at the Barcelo Bavaro Palace and other Barcelo hotels through Go-Go Tours, a separate travel agency, and through Amadeus, an online travel reservation system. If a costumer requests from Vacation Tours a hotel that is not being promoted by Vacation Tours, Vacation Tours will still book the hotel for the customer.

George Alvarez, a consultant to Vacation Tours, is responsible for all of Vacation Tours' marketing and promotional efforts, including its web presence. In 2001, Mr. Alvarez registered the domain name www.bavaropalace.com. On the website there are a

number of hotels listed including the Barcelo Bavaro Palace as well as a number of other hotels located on Bavaro Beach. The website also lists the telephone numbers for Vacation Tours. If someone is interested in a hotel on the website, they can click a link which takes them to the phone numbers for Vacation Tours.

On February 1, 2004, Vacation Tours ran identical advertisements in <u>The Miami Herald</u> and <u>El Nuevo Herald</u> promoting tour packages that included hotel accommodations at Plaintiff's hotel in the Bavaro Beach region of the Dominican Republic. The advertisements provided that the rooms were subject to availability. The advertisements also contained Vacation Tour's telephone numbers and the Internet address <u>www.bavaropalace.com</u>. On February 5, 2004, the same advertisement ran in <u>The Miami Herald's</u> neighbors' section.

Subsequently, Oscar Serrano, the individual responsible for promotions and marketing of the Barcelo brand hotels, went to Vacation Tours' Coral Gables office and met with Ms. Metz-Mendez. He asked her to stop running the advertisements and she agreed. On February 11, 2004, Bavaro Palace, S.A.'s counsel sent Vacation Tours a cease and desist letter, and the above-styled action ensued.

Bavaro Palace, S.A., the owner and operator of the hotel Barcelo Bavaro Palace, alleges that the Defendants use of the term "bavaropalace.com" in: (1) advertisements in <u>The Miami Herald</u> and <u>El Nuevo Herald</u> on February 1, 2004; (2) an advertisement in The <u>Miami Herald</u> of February 5, 2004; and (3) by the advertisement and use of the domain

name www.bavaropalce.com is in violation of Plaintiffs trademark rights and is unfair competition.

Bavaro Beach is a beach in the Punta Cana area of the Dominican Republic. Barcelo hotels are not the only hotel properties physically located on Bavaro Beach, and there are numerous other businesses in Bavaro Beach that use the word Bavaro in their commercial names. For example, the Fiesta Bavaro Palace and Riu Palace are also hotels located in the Bavaro Beach area using the name "Bavaro" to identify their hotels. At trial, Ms. Metz-Mendez testified that in the travel industry, the term "Palace," refers to high end hotels.

Plaintiffs' marketing materials for its hotel states: "The Barcelo Bavaro Palace Hotel is the most luxurious in the complex, set right on the impressive Bavaro Beach. A great setting for a 5-star hotel." (Plaintiffs' Exhibit 153.) The record is clear, throughout Plaintiffs' marketing materials, that when Plaintiff refers to hotels it owns they are referred to as "Barcelo Bavaro Palace." Plaintiff places signs on its hotel with the name "Barcelo Bavaro Palace."

The testimony is uncontradicted that Plaintiff's hotel was known in the travel business as the "Barcelo Bavaro Palace." Viajes Barcelo, S.A., a/k/a Hotel Beds Travel Destination Services, a company related to Barcelo Hotel and Resorts, lists on its website, www.hotelbeds.com, hotels that can be reserved through its online reservation system. There the Plaintiff's hotel is listed as "Barcelo Bavaro Palace," not as "Bavaro Palace."

5

The other hotels listed on the website include "Barcelo Bavaro Golf Resort," "Barcelo Bavaro Casino," "Barcelo Bavaro Beach," and "Barcelo Caribe." Other travel-related websites, including Travelocity.com and Expedia.com, refer to the Plaintiff's hotel as "Barcelo Bavaro Palace." These websites, like the Defendants', website, advertise hotel rooms including Plaintiff's hotel.

At the close of Plaintiffs' case, Plaintiffs Bavaro Beach, S.A., Golf de Bavaro, S.A., and Operadora de Hoteles Barcelo, S.A., stipulated a dismissal of all claims, with prejudice, against Defendants. (Trial Trans. at 76-77.) This leaves Bavaro Beach, S.A. as the only remaining Plaintiff. Bavaro Palace, S.A., also stipulated to dismiss its claims against Defendants Vacation Tours of South Beach, Inc., and Alexandra Alvarez (Trial Trans. at 76-77) leaving only Vacation Tours, Inc., and Ms. Metz-Mendez as Defendants.

## II. DISCUSSION

A trademark is any "word, name, symbol, device, or any other combination thereof used by a manufacturer or retailer of a product, in connection with that product, to help consumers identify that product as different from the product of competitors." M. Epstein, Modern Intellectual Property 289 (2d ed. 1991). The use of an unregistered trademark can constitute a violation of 15 U.S.C. § 1125 where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source. State of Florida v. Real Juices Inc., 330 F. Supp. 428 (M.D. Fla.

1971).

At trial, Plaintiff did not introduce any evidence in which it advertised or promoted the alleged mark or its hotel as "Bavaro Palace" in the United States or elsewhere. In addition, Plaintiff failed to provide testimony regarding whether the public actually identifies the name "Bavaro Palace" with the Plaintiff's hotel, the "Barcelo Bavaro Palace." Plaintiff offered no evidence or any proof regarding efforts made by it, to promote the name "Bavaro Palace" as connected with "Barcelo Bavaro Palace."

To prevail on its unfair competition claim, the Plaintiff must show that there is both secondary meaning and a likelihood of public confusion. Burger King Corp. v. Pilgrim Pride Corp., 705 F. Supp. 1522 (S.D. Fla. 1988).

A commercial user of a geographic term can only earn legal protection for it either by satisfying the requirements for incontestability or by developing use of the term to the point where a sufficient group ascribes an additional (secondary) meaning to it. HBP Inc. v. Am. Marine Holdings, Inc., 290 F. Supp.2d 1320, 1329-30 (M.D. Fla. 2003). "A high degree of proof is necessary to establish secondary meaning for a descriptive term . . ." Ice Cold Auto Air of Clearwater v. Cold Air & Accessories, Inc., 828 F. Supp. 925, 931 (M.D. Fla. 1993) (citing Am. Television and Communications Corp. v. Am. Television and Communications, Inc., 810 F.2d 1546 (11th Cir. 1987)). Plaintiff may establish secondary meaning by proof of: (1) length and manner of its use; (2) nature and extent of advertising and promotion; (3) efforts made by the plaintiff to promote conscious

connections in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture. Conagra, Inc. v. Singleton, 743 F.2d 1508, 1513 (11th Cir. 1984). Based on the testimony and evidence presented to the Court at trial, Plaintiff failed to demonstrate that "Bavaro Palace" has a secondary meaning. As a result, the Court finds that Plaintiff's alleged mark is geographically descriptive and has no secondary meaning.

The following factors aid the court in deciding whether there is a likelihood of public confusion: (1) the type of the mark at issue; (2) similarity of marks; (3) similarity of product services; (4) identity of purchasers and similarity of retail outlets; (5) similarity of advertising campaigns; (6) the defendant's intent; and (7) actual confusion. Ice Cold Auto Air of Clearwater, 828 F. Supp. at 934-35. At trial, Plaintiff offered no evidence of any person, company, or entity that was confused by Vacation Tours' use of the alleged mark, its advertisements, or the website, www.bavaropalace.com. Therefore, the Court finds that Plaintiff failed to prove that there was any likelihood of public confusion by the Defendants' advertisements, or their website, www.bavaropalace.com, or that Defendants engaged in any unfair and deceptive trade practices.

To prevail under the Anticybersquatting Consumer Protection Act ("ACPA"), Plaintiff must establish that: (1) its marks are distinctive and famous; (2) defendants' domain names are identical or confusingly similar to plaintiff's marks; and (3) defendants

8

registered or used the domain names with bad faith intent to profit. 15 U.S.C. § 1125(d)(1)(A). At trial, Plaintiff failed to demonstrate that the alleged mark, Bavaro Palace, was distinctive and famous; that the Defendants domain name was identical or confusingly similar to Plaintiff's alleged marks, and that the Defendants registered or used the domain names with bad faith intent to profit. As such, its claim for violation of ACPA cannot be sustained.

### III. CONCLUSION

Based on the evidence presented at trial, the Court finds that Plaintiff has not demonstrated that it has a protectable interest in the term "Bavaro Palace." The combination of the geographic term, "Bavaro," with a generic term "palace," will not save an otherwise geographically descriptive mark. Therefore, this Court concludes that Plaintiff's trademark and unfair competition claims fail as a matter of law.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is ORDERED, ADJUDGED and DECREED that JUDGMENT is entered in favor of the DEFENDANTS on all of Plaintiff's claims. The Court retains jurisdiction to fix fees and costs, upon appropriate motion.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 10th day of June, 2005.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: **_Counsel for Plaintiff_**
Wilfredo A. Rodriguez, Esq.
HOLLAND & KNIGHT LLP
701 Brickell Avenue
Suite 3000
Miami, Florida 33131
Facsimile: (305) 789-7799

**_Counsel for Defendant_**s
Raymond V. Miller, Esq.
GUNSTER YOAKLEY & STEWART, P.A.
One Biscayne Tower
Suite 3400
Two South Biscayne Boulevard
Miami, Florida 33131
Facsimile: (305) 376-6010